IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADAM TITUS, #R-43512, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17−cv−1297−NJR ) ) |
| LIEUTENANT MITCHELL, JOHN DOE, JANE DOE, JANE DOE, JOHN DOE, WEXFORD HEALTH SOURCES, MAJOR WESTFALL, C/O CARON, C/O WEAVER, C/O WEBB, LIEUTENANT GROVES, WARDEN LASHBROOK, LIEUTENANT SAMUELS, DIRECTOR BALDWIN, SERGEANT DOEDING, C/O REYNOLDS, C/O STINSON, C/O MCDONOUGH, C/O EDWARDS, C/O KELLER, C/O MONTROY, and C/O FRANCIS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Adam Titus, an inmate in Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Menard Correctional Center ("Menard"). In his Complaint, Plaintiff claims the defendants

1

subjected him to excessive force, were deliberately indifferent to his serious medical issues, subjected him to cruel and unusual punishment by placing him in the staff assault weapon violator program and harassing him, and violated state law when they stole his property. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important,

"not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

Plaintiff organizes his Complaint (Doc. 1) into several "Counts." The Court will therefore organize the facts using the same scheme.

**A. Count 1 – Deprivation of Medical Care / Cruel and Unusual Punishment**

Plaintiff claims that Count 1 involves claims against Mitchell, C/O John Does 1-9, Mental Health Jane Doe 1, Med-Tech Jane Does 1-3, Sergeant John Doe 1, and Wexford Health Sources. (Doc. 1, p. 13). Under Count 1, Plaintiff makes the following allegations: on June 16, 2017, Plaintiff was "tackled by three prison guards (John Does [1-3])[1] and slammed to the ground." *Id.* Plaintiff was restrained, and John Does 1-3 punched him in the face and back repeatedly and squeezed the handcuffs while placing Plaintiff in a headlock and twisting Plaintiff's wrist. *Id.* Lieutenant Mitchell walked up to Plaintiff and kicked him in the face, and

---

[1] The Court notes that Plaintiff does not consistently provide clear labels for John and Jane Doe defendants in his Complaint. However, the order these defendants appear in the Complaint appears to be their intended John/Jane Doe number (*e.g.*, the first C/O John Doe mentioned should be considered C/O John Doe 1, the first Med-Tech Jane Doe mentioned should be Med-Tech Jane Doe 1).

3

grabbed him by the leg and twisted it. *Id.*

"Plaintiff was taken to healthcare by two prison guards (John Does [4-5]), while Plaintiff repeatedly requested medical attention as Plaintiff complained of not being able to see out his left eye to mental health (Jane Doe)." (Doc. 1, pp. 13-14). As Plaintiff was seen by a Med-Tech (Jane Doe [1]), she noted Plaintiff was bleeding from his face and head. (Doc. 1, p. 14). A group of prison guards (John Does 6-8) then entered and began to punch and knee Plaintiff in the back, face, and head. *Id.* Plaintiff was then dragged to the front of segregation, as three prison guards kneed and punched Plaintiff and called him derogatory names. *Id.* Plaintiff was taken to the shower in segregation while he repeatedly asked four guards (John Does) for medical attention. *Id.* Plaintiff was then placed in a cell, and minutes later a sergeant (Sergeant John Doe 1) and gallery officer (C/O John Doe 9) took Plaintiff to Med-Tec Jane Doe [2] and Med-Tech Jane Doe [3]. *Id.* Plaintiff tried to explain his injuries to the medical staff, but he was ignored. *Id.* Plaintiff was then taken back to his cell and Sergeant John Doe 1 twisted Plaintiff's wrist as Plaintiff directed requests for medical attention to Sergeant John Doe 1 and C/O John Doe 9. (Doc. 1, p. 15).

Plaintiff asserts these facts demonstrate he was subjected to excessive force by Mitchell, C/O John Does 1, 2, 3, 6, 7, and 8, and Sergeant John Doe 1. *Id.* Plaintiff also claims that the above facts demonstrate that Mental Health Jane Doe 1, Med-Tech Jane Doe 1, and C/O John Does 4, 5, and 9 failed to intervene in the alleged excessive force, and that Mental Health Jane Doe 1, Med-Tech Jane Does 1, 2, and 3, C/O John Does 6, 7, and 8, Sergeant John Doe 1, and Wexford Health Sources were deliberately indifferent to his medical needs. *Id.* Plaintiff further claims that "Wexford's policy and/or custom of reviewing and in this case ignoring and not treating inmates with medical issues, results in deprivation of Plaintiff's rights to medical

attention, or otherwise caused significant delay in Plaintiff's attempts to gain medical attention." (Doc. 1, pp. 15-16). "As a result, Plaintiff has loss of vision in his left eye, back pain, and limited movement in his wrist, right leg pain, and [he] suffer[s] from extreme headaches and dizziness and loss of hearing." (Doc. 1, p. 16).

### B. Count 2 – Cruel and Unusual Punishment

Plaintiff claims that Count 2 involves claims against C/O John Does 10-20, Major Westfall, C/O Caron, C/O Weaver, C/O Webb, Lieutenant Groves, Warden Lashbrook, Lieutenant Samuels, Director Baldwin, Sergeant Doeding, C/O Reynolds, C/O Stinson, C/O McDonough, C/O Edwards, C/O Keller, C/O Montroy, and C/O Francis. (Doc. 1, p. 17). Under Count 2, Plaintiff makes the following allegations: on April 5, 2017, Plaintiff was transferred to Menard. *Id.* Plaintiff wore a black and white striped jumpsuit, while other inmates had on yellow jumpsuits. *Id.* As Plaintiff was getting off of the bus, C/O John Doe 10 stated to C/O John Does 11, 12, 13, 14, and 15: "We got a striper." *Id.* As Plaintiff walked toward these guards, they got in his face and told him: "This is Menard, we going to beat your ass down here." *Id.* C/O John Doe 10 then told another officer to "stomp his brains out" if Plaintiff turned or did anything. *Id.*

On April 10, 2017, when Plaintiff was let out for chow, C/O John Does 16, 17, 18, 19, and 20 "were standing amongst the stairwell blocking the exit." (Doc. 1, p. 18). As Plaintiff walked toward the prison guards, they harassed him, called him derogatory names, and threatened him with physical harm due to his being a "black and striper." *Id.* Plaintiff tried to speak to Major Westfall, but he was told to keep moving. *Id.*

On May 20-21, 2017, C/O John Does 15-20 "repeatedly harassed and threatened all black and while stripers." *Id.* When Plaintiff was let out for chow, C/O John Does 15-20 "stood blocking the stairway, folding their arms and sticking their feet out while poking out their

5

stomach, forcing Plaintiff and others to turn sideways and grab the rail while squeezing through them," as C/O Caron called them "'stripers" and "punks" and told staff to "smash they face." *Id.* On May 21, 2017, C/O Caron told Plaintiff, while the guards were blocking the stairway, that if he touched him he would use physical force on him. (Doc. 1, p. 19). At the end of the stairway, a sergeant was pointing a large can of mace at Plaintiff's face. *Id.* On June 8, 2017, C/O Weaver and Webb harassed Plaintiff and called him derogatory names. *Id.* They blocked the stairway while a C/O stood with a can of chemical agent and threatened "stripers," saying that he could spray them. *Id.* Plaintiff tried to speak with Lieutenant Samuels but was ignored and threatened with segregation. *Id.*

Since April 6, 2017, "Plaintiff was placed in the staff assaulter weapon violator program which was started by IDOC Administration." *Id.* Plaintiff has been subjected to discrimination, harassment, and retaliation since his placement in this program, which has a policy requiring those in the program to wear black and white striped jumpsuits and to be segregated by gallery apart from general population. (Doc. 1, pp. 19-20). The policy also subjects those in the program to visit, educational program, job, clothing, yard, and commissary restrictions, as well as retaliation, harassment, and excessive force by prison guards. (Doc. 1, p. 20).

At the end of his recitation of facts under Count 2, Plaintiff lists Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis, and claims that they "had a duty and obligation to ensure that Plaintiff while incarcerated at Menard . . . was not subject to discipline that amounts to cruel and unusual punishment but . . . acted with deliberate indifference by failing to carry out their respective duty." *Id.* Plaintiff also claims that he suffers from emotional distress and psychological and physical pain. *Id.*

### C. Count 3 – Conversion of Personal Property

Under Count 3, Plaintiff makes the following allegations: Doeding and Montroy had "access to Plaintiff's property that was taken from his cell while Plaintiff was in transportation and placed in another facility." (Doc. 1, p. 21). Plaintiff claims these defendants intentionally and wrongly deprived him of personal property to which he is entitled. *Id.*

### D. Relief Requested

Plaintiff requests "temporary and permanent injunctive relief prohibiting the use of 'black and white' stripers program and policy." (Doc. 1, p. 22). Plaintiff also seeks monetary damages, an outside medical examination, and a temporary restraining order preventing Plaintiff's transfer to Menard until the close of this case. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into six counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** On June 16, 2017, Mitchell, C/O John Does 1, 2, 3, 6, 7, and 8, and Sergeant John Doe 1 subjected Plaintiff to excessive force in violation of the Eighth Amendment.

**Count 2 –** On June 16, 2016, Mental Health Jane Doe 1, Med-Tech Jane Doe 1, and C/O John Does 4, 5, and 9 failed to intervene in the alleged excessive force in violation of the Eighth Amendment.

**Count 3 –** Mental Health Jane Doe 1, Med-Tech Jane Does 1, 2, and 3, C/O John Does 6, 7, and 8, Sergeant John Doe 1, and Wexford Health Sources showed deliberate indifference to Plaintiff's serious medical needs resulting from the alleged excessive force in violation of the Eighth Amendment.

**Count 4 –** C/O John Does 10-20, Westfall, Caron, Weaver, Webb, and Samuels subjected Plaintiff to harassment and threats in violation

of the Eighth Amendment.

**Count 5 –**     Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis subjected Plaintiff to cruel and unusual punishment in the form of the staff assault weapon violator program in violation of the Eighth Amendment.

**Count 6 –**     Doeding and Montroy deprived Plaintiff of certain personal property in violation of Illinois law.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

At the outset, it is apparent that Plaintiff has brought at least two distinct sets of claims against different defendants. These claims do not belong together in a single action. Therefore, the Court will exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607. Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims related to Plaintiff being placed in the staff assault weapon violator program and being harassed by many of the same defendants, Counts 4 and 5, into a separate action. Count 6 will also be included in this severed action, as it shares defendants Doeding and Montroy with Count 5. This separate action, for Counts 4, 5, and 6, will have a newly assigned case number, and it shall be assessed a filing fee. The severed case shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignments have been made.

Counts 1, 2 and 3 shall not be severed as they appear to be related. Those claims receive preliminary review below. Plaintiff's separate Motion for "Reconsideration for Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction" (Doc. 6) will also be considered in this Order and remain a part of this case.

8

## Count 1

Plaintiff claims he was subjected to excessive force by Mitchell, C/O John Does 1, 2, 3, 6, 7, and 8, and Sergeant John Doe 1. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

At this early stage, Plaintiff has satisfied the excessive force standard as against Mitchell, C/O John Does 1, 2, 3, 6, 7, and 8, and Sergeant John Doe 1.

## Count 2

Plaintiff asserts that Mental Health Jane Doe 1, Med-Tech Jane Doe 1, and C/O John Does 4, 5, and 9 failed to intervene during the events alleged in Count 1. The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, stating that "'police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so' could be held liable under § 1983." *Fillmore v. Page*, 358 F.3d 496, 505-506 (7th Cir. 2004) (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)). "This

language merely reiterates the long-established rule that '[a]n official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights.'" *Fillmore*, 358 F.3d at 506 (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) (emphasis added)).

Given the low standard applicable to § 1915A review, the Court will allow Count 2 to proceed against Mental Health Jane Doe 1, Med-Tech Jane Doe 1, and C/O John Does 4, 5, and 9 because the allegations suggest they were present during some of the beatings Plaintiff allegedly sustained, and Plaintiff claims they failed to act to stop them.

### Count 3

Plaintiff also claims that Mental Health Jane Doe 1, Med-Tech Jane Does 1, 2, and 3, C/O John Does 6, 7, and 8, Sergeant John Doe 1, and Wexford Health Sources were deliberately indifferent to his serious medical needs that arose from the alleged excessive force. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The Court considers Plaintiff's claim that he was assaulted and, because of the assault, sustained loss of vision in his left eye, suffers from back pain, has limited movement in his wrist, experiences right leg pain, suffers from extreme headaches and dizziness, and has hearing loss to

have satisfied the objective standard. The Court further considers Plaintiff to have sufficiently alleged, at this early stage, that Mental Health Jane Doe 1 and Med-Tech Jane Does 1, 2, and 3 failed to treat his injuries or were otherwise aware of his injuries and failed to seek treatment for him in violation of the Eighth Amendment. Count 3 will therefore proceed against them.

Although C/O John Does 6, 7, and 8 and Sergeant John Doe 1 are not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus C/O John Does 6, 7, and 8 and Sergeant John Doe 1, who allegedly assaulted Plaintiff and then prevented Plaintiff from getting immediate medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care. At this stage, it cannot be determined whether the actions of C/O John Does 6, 7, and 8 and Sergeant John Doe 1 resulted in Plaintiff being denied medical care or otherwise constituted deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff's claim against these defendants cannot be dismissed.

Finally, with respect to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff claims "Wexford's policy and/or custom of reviewing and in this case ignoring and not treating inmates with medical issues, results in deprivation of Plaintiff's rights to medical attention, or otherwise caused significant delay in Plaintiff's attempts to gain medical attention." (Doc. 1, pp. 15-16). This is an incredibly vague and general statement that provides little to no information about the

11

policy Plaintiff believes Wexford employees followed to deprive him of medical attention, and does not bring Plaintiff's deliberate indifference claim against Wexford across the line from possibility to plausibility. Therefore, Wexford will be dismissed for failure to state a claim upon which relief may be granted.

**Identification of Unknown Defendants**

Plaintiff shall be allowed to proceed with Counts 1, 2, and 3 against various John and Jane Doe defendants. However, these defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Lashbrook is already named. Because all claims against her are being severed into the new action, however, she will only remain in this action in her official capacity, and she shall be responsible for responding to discovery (formal or otherwise) aimed at identifying these John and Jane Doe defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the Doe defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

**Pending Motions**

Plaintiff's Motion for "Reconsideration for Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction" ("TRO Motion") (Doc. 6) is **DENIED** in part and **REFERRED** to United States Magistrate Judge Donald G. Wilkerson in part. In his TRO

Motion, Plaintiff renews his request for a TRO and preliminary injunction preventing his transfer to Menard during the pendency of this case. (Doc. 6, p. 1). Notably, the Court previously issued an Order (Doc. 5) denying the request for a temporary restraining order in the request for relief in Plaintiff's Complaint.

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before defendants can be heard*. Plaintiff's TRO Motion (Doc. 6), to the extent it seeks a temporary restraining order, is therefore **DENIED**.

Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of [such] relief."). Further, as was noted in the Court's previous Order (Doc. 5), "[a] prisoner has no due process right to be

housed in any particular facility." *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995); *see also Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999) ("prisoner has no legally protected interest in [his] keeper's identity").

Plaintiff claims that, because of his sentence and the disciplinary charges he has incurred, he will likely be transferred to a maximum security facility when he has finished serving his time in disciplinary segregation at Pontiac. (Doc. 6, pp. 1-2). Plaintiff claims that this facility will likely be Menard because Stateville, the other available maximum security facility, only houses a small number of inmates because it is "closing down." (Doc. 6, p. 2). In the TRO Motion, Plaintiff alleges that he "would face irreparable injury, loss, and/or damage when he is transferred back to Menard." (Doc. 6, p. 3). Plaintiff claims that he was assaulted at Menard, sustained serious injuries, and was later repeatedly retaliated against and denied medical care. (Doc. 6, p. 5). He claims he still experiences severe pain from the injuries he sustained, and that he will not receive adequate medical care for them if he is transferred back to Menard. (Doc. 6, p. 10). He also alleges that his being denied adequate medical treatment of his injuries could result in his never regaining full function of his eye, back, leg, wrist, and ear. (Doc. 6, p. 10).

The Court finds Plaintiff's allegations of potential future harm to be largely speculative. Plaintiff does not allege when his disciplinary sentence will be served, whether it will be soon or well into the future. Further, though Plaintiff explains why his ultimate transfer will likely be to Menard, such a transfer is not a certainty, nor is it clear that he will receive inadequate medical care upon his arrival there. The Court will therefore not grant Plaintiff the extraordinary relief he seeks in the form of a TRO. The Court is not without sympathy to Plaintiff's plight, however, and will not deny his TRO Motion to the extent it seeks a preliminary injunction. Given the harm allegedly at stake, whether it be soon or further into the future, Plaintiff's TRO Motion (Doc. 6),

to the extent it requests a preliminary injunction preventing Plaintiff's transfer to Menard, is **REFERRED** to Magistrate Judge Wilkerson for further consideration.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is hereby **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision. The Court will also direct the Clerk to file the motion in the case being severed from this action.

Plaintiff's Motion to Preserve Evidence (Doc. 7) is also hereby **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision in this action. The Court will not direct the Clerk to file the motion in the case being severed from this action, however, as Plaintiff is only specifically seeking footage from June 16, 2017 to be preserved, and the events take allegedly took place on June 16, 2017 are not at issue in the severed action.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **MITCHELL**, **C/O JOHN DOES 1, 2, 3, 6, 7**, and **8**, and **SERGEANT JOHN DOE 1**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **MENTAL HEALTH JANE DOE 1**, **MED-TECH JANE DOE 1**, and **C/O JOHN DOES 4, 5,** and **9**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **MENTAL HEALTH JANE DOE 1**, **MED-TECH JANE DOES 1, 2,** and **3**, **C/O JOHN DOES 6, 7,** and **8**, and **SERGEANT JOHN DOE 1**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** as against **WEXFORD HEALTH SOURCES** for failure to state a claim upon which relief may be granted, and **WEXFORD HEALTH SOURCES** is therefore **DISMISSED** from this case without prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 4**, **5**, and **6**, which are unrelated to the other claims in this action, are **SEVERED** into a new case against **C/O JOHN DOES 10-20**

15

(Count 4), **WESTFALL** (Counts 4 and 5), **CARON** (Counts 4 and 5), **WEAVER** (Count 4), **WEBB** (Counts 4 and 5), **SAMUELS** (Counts 4 and 5), **GROVES** (Count 5), **BALDWIN** (Count 5), **DOEDING** (Counts 5 and 6), **KELLER** (Count 5), **REYNOLDS** (Count 5), **MCDONOUGH** (Count 5), **MONTROY** (Counts 5 and 6), **STINSON** (Count 5), **EDWARDS** (Count 5), **FRANCIS** (Count 5), and **LASHBROOK** (Count 5).

The claims in the newly severed case shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
- Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[2] No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are Counts 1, 2, and 3*.

**IT IS FURTHER ORDERED** that **C/O JOHN DOES 10-20**, **WESTFALL**, **CARON**, **WEAVER**, **WEBB**, **SAMUELS**, **GROVES**, **BALDWIN**, **DOEDING**, **KELLER**, **REYNOLDS**, **MCDONOUGH**, **MONTROY**, **STINSON**, **EDWARDS**, **FRANCIS**, and **LASHBROOK** (individual capacity only) are **TERMINATED** from **this** action with prejudice.

**IT IS ORDERED** that as to **COUNTS 1**, **2**, and **3**, the Clerk of Court shall prepare for **MITCHELL, C/O JOHN DOES 1-9** (once identified), **SERGEANT JOHN DOE 1** (once identified), **MENTAL HEALTH JANE DOE 1** (once identified), **MED-TECH JANE DOES**

---

[2] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**1-3** (once identified), and **LASHBROOK** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to these defendants' places of employment as identified by Plaintiff. If these defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on them, and the Court will require them to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the John and Jane Doe Defendants until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying the John and Jane Doe Defendants with particularity. Further, this entire

matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 6, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**