IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADAM TITUS, # R-43512, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-1315-MJR |
| | ) | |
| JOHN DOES #10-20 (Correctional Officers), | ) | |
| MAJOR WESTFALL, | ) | |
| C/O CARON, | ) | |
| C/O WEAVER, | ) | |
| C/O WEBB, | ) | |
| LIEUTENANT SAMUELS, | ) | |
| LIEUTENANT GROVES, | ) | |
| DIRECTOR BALDWIN, | ) | |
| SERGEANT DOEDING, | ) | |
| C/O KELLER, | ) | |
| C/O REYNOLDS, | ) | |
| C/O McDONOUGH, | ) | |
| C/O MONTROY, | ) | |
| C/O STINSON, | ) | |
| C/O EDWARDS, | ) | |
| C/O FRANCIS, | ) | |
| and WARDEN LASHBROOK, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff is currently incarcerated at Pontiac Correctional Center ("Pontiac"). The claims in the present case were severed from Plaintiff's original *pro se* civil rights action, *Titus v. Mitchell, et al.*, Case No. 17-cv-1297-NJR,[1] where they were designated as Counts 4, 5, and 6. (Doc. 1). These claims arose while Plaintiff was confined at Menard Correctional Center ("Menard"). This case is now before the Court for a preliminary review of Counts 4, 5, and 6

---

[1] Counts 1, 2, and 3 remain in the original action (Case No. 17-cv-1297-NJR-DGW), where they are proceeding for further consideration as to some Defendants. (Doc. 1).

1

pursuant to 28 U.S.C. § 1915A.

In the order severing Plaintiff's claims, the Court characterized Counts 4, 5, and 6 as:

**Count 4:** C/O John Does 10-20, Westfall, Caron, Weaver, Webb, and Samuels subjected Plaintiff to harassment and threats in violation of the Eighth Amendment;

**Count 5:** Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis subjected Plaintiff to cruel and unusual punishment in the form of the staff assault weapon violator program in violation of the Eighth Amendment;

**Count 6:** Doeding and Montroy deprived Plaintiff of certain personal property in violation of Illinois law.

## The Complaint (Doc. 2)

Plaintiff set forth his factual allegations relating to Counts 4 and 5 in the section of his Complaint labeled as "Count 2 (Cruel and Unusual Punishment)." (Doc. 2, pp. 17-20). He also presented a claim for "Count 3 (Conversion of Personal Property)," which the Court has designated herein as Count 6. (Doc. 2, p. 21).

Plaintiff was transferred to Menard on April 5, 2017. (Doc. 2, p. 17). He was dressed in a black and white striped jumpsuit, while other inmates had on yellow jumpsuits. As Plaintiff was getting off the transfer bus, C/O John Doe 10 stated to C/O John Does 11, 12, 13, 14, and 15: "We got a striper." *Id.* As Plaintiff walked toward these guards, they got in his face and told him: "This is Menard, we going to beat your ass down here." *Id.* C/O John Doe 10 then told another officer to "stomp his brains out" if Plaintiff turned or did anything. *Id.*

On April 10, 2017, when Plaintiff was let out of his cell for chow, C/O John Does 16, 17, 18, 19, and 20 "were standing amongst the stairwell blocking the exit." (Doc. 2, p. 18). As Plaintiff walked toward these guards, they harassed him, called him derogatory names, and threatened him with physical harm due to his being a "black and striper." *Id.* Plaintiff tried to

2

speak to Major Westfall, but he was told to keep moving. *Id.*

On May 20-21, 2017, C/O John Does 15-20 "repeatedly harassed and threatened all black and white stripers." *Id.* When Plaintiff was let out for chow, C/O John Does 15-20 "stood blocking the stairway, folding their arms and sticking their feet out while poking out their stomach, forcing Plaintiff and others to turn sideways and grab the rail while squeezing through them," as C/O Caron called them "'stripers" and "punks" and told staff to "smash they face." *Id.* On May 21, 2017, C/O Caron told Plaintiff, while the guards were blocking the stairway, that if Plaintiff touched him he would use physical force on Plaintiff. (Doc. 2, p. 19). At the end of the stairway, a sergeant was pointing a large can of mace at Plaintiff's face. *Id.*

On June 8, 2017, C/O Weaver and C/O Webb harassed Plaintiff and called him derogatory names. *Id.* They blocked the stairway while a C/O stood with a can of chemical agent and threatened "stripers," saying that he could spray them. *Id.* Plaintiff tried to speak with Lieutenant Samuels but was ignored and threatened with segregation. *Id.*

Since April 6, 2017, Plaintiff has been "placed in the staff assaulter weapon violator program which was started by IDOC Administration." *Id.* Plaintiff has been subjected to discrimination, harassment, and retaliation since his placement in this program, which has a policy requiring those in the program to wear black and white striped jumpsuits and to be segregated by gallery apart from the general population. (Doc. 2, pp. 19-20). The policy also subjects those in the program to restrictions on visits, educational programs, jobs, clothing, yard, and commissary, as well as retaliation, harassment, and excessive force by prison guards. (Doc. 2, p. 20).

At the end of his recitation of facts in this section of the Complaint, Plaintiff lists Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough,

3

Montroy, Stinson, Edwards, and Francis, and claims that they "had a duty and obligation to ensure that Plaintiff while incarcerated at Menard . . . was not subject to discipline that amounts to cruel and unusual punishment but . . . acted with deliberate indifference by failing to carry out their respective duty." *Id.* Plaintiff also claims that he suffers from emotional distress and psychological and physical pain. *Id.*

Under the section of the Complaint labeled as Count 3 (Count 6 herein), Plaintiff alleges that Doeding and Montroy had "access to Plaintiff's property that was taken from his cell while Plaintiff was in transportation and placed in another facility." (Doc. 2, p. 21). Plaintiff claims these defendants intentionally and wrongly deprived him of personal property to which he is entitled. *Id.*

Plaintiff requests "temporary and permanent injunctive relief prohibiting the use of 'black and white' stripers program and policy." (Doc. 2, p. 22). Plaintiff also seeks monetary damages and a temporary restraining order preventing Plaintiff's transfer to Menard until the close of this case. *Id.* Plaintiff has not filed a separate motion seeking injunctive relief.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a threshold review of the Complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. Accepting Plaintiff's allegations as true, the Court finds that Count 4 survives threshold review under § 1915A. However, Counts 5 and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

**Count 4 – Harassment and Threats – Eighth Amendment**

Ordinary verbal harassment does not rise to the level of an Eighth Amendment violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal

4

harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). However, depending on the circumstances, a threat to kill or inflict serious bodily harm on an inmate may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009); *see, e.g., Irving v. Dormire*, 519 F.3d 442, 445, 449-50 (8th Cir. 2008) (pattern of conduct by defendant including allowing another inmate to attack plaintiff, offering to pay other inmates to beat him, providing a weapon to an inmate to use against plaintiff, and labeling plaintiff a "snitch," coupled with repeated verbal death threats, stated a claim); *Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (prisoner's allegation that correctional officer put a gun to his head and threatened to shoot him stated Eighth Amendment claim); *Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986) (defendant pointed gun at plaintiff, cocked it and threatened to shoot). *See also Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015) (dismissal of Eighth Amendment claim based on sexual harassment was premature, where it was accompanied by physical conduct, plaintiff alleged psychological trauma to the extent of seeking mental health care, and harassment created risk of assault by other prisoners).

Courts must apply an objective standard to determine whether a particular threat, given all the circumstances, may amount to a constitutional violation. *Dobbey*, 574 F.3d at 445. The pertinent inquiry is whether a "reasonable" victim would fear for his or her life or safety as a result of the threat; not whether this plaintiff experienced actual fear. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)).

In Plaintiff's case, he describes repeated instances of threats issued by correctional officers to beat him, "stomp his brains out," smash his face, and other unspecified threats to

5

inflict physical harm on him. (Doc. 2, pp. 17-19). Several times, officers physically blocked the stairway so that Plaintiff and other inmates had to squeeze around them; Caron threatened to harm Plaintiff if Plaintiff made physical contact with him in that scenario. During two of those incidents, an officer pointed a can of mace or another chemical at Plaintiff while threats were issued. A group of officers was present each time threats were made. Taking these circumstances together, the repeated verbal threats and harassment, coupled with physical intimidation by a group of correctional officers and brandishing of chemical agents, could lead a reasonable person to fear for his safety. The Eighth Amendment claim in Count 4 therefore survives § 1915A review, and may proceed against the officers who were directly involved in threatening Plaintiff.

**Count 4** shall proceed against C/O John Does 10-15 for the April 5, 2017, incident; against C/O John Does 16-20 and Caron for threatening Plaintiff on April 10 and May 20-21, 2017; against Westfall for ignoring Plaintiff's request for help on April 10, 2017; against Weaver and Webb for the June 8, 2017, threats; and against Samuels for ignoring Plaintiff when he attempted to report the threats on June 8.

The remaining Defendants Plaintiff lists in the section of the Complaint relating to Counts 4 and 5 (Groves, Lashbrook, Baldwin, Doeding, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis) are not included in Count 4, because Plaintiff does not describe any threats made to him by these officials. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). Plaintiff does not indicate that these other officials were present during the incidents described in Count 4,

or that they were personally involved in the aggressive conduct underlying this count. The claims against these individuals shall be addressed under Count 5 below.

**Dismissal of Count 5 – Staff Assaulter/Weapon Violator Program**

This count is premised on Plaintiff's claim that his placement in the "staff assaulter weapon violator program" by IDOC officials caused him to be subjected to "discrimination, harassment, and retaliation," as well as excessive force[2] by guards. (Doc. 2, pp. 19-20). Prisoners who are put into this program are required to wear black and white jumpsuits, and are housed in a separate gallery from general population inmates. Furthermore, inmates labeled as staff assaulters/weapon violators face restrictions in their visits with outsiders, participation in educational and job programs, and access to clothing, yard, and commissary. (Doc. 2, p. 20; Doc. 2-1, pp. 36-37). Plaintiff seeks to hold Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis liable because they played some role in placing him in the staff assaulter/weapon violator program, and/or failed in their duty to ensure that he was not subjected to cruel and unusual punishment as a result of being in that program. (Doc. 2, p. 20).

Plaintiff cannot maintain a distinct claim based merely on his placement in the staff assaulter/weapon violator program. Even where a prisoner is improperly classified, no constitutional violation occurs. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). The same is true for

---

[2] Notably, the Complaint does not allege that Plaintiff actually was subjected to excessive force; only that he was the target of threats to use physical force against him. Those threats are included in Count 4.

assignment to a particular location or program within a prison – state officials have discretion to manage prisoners by classifying them or placing them in programs or housing wings without implicating constitutional concerns.

Furthermore, the fact that inmates in the program did not have the same access to programs or privileges enjoyed by general population prisoners does not amount to a constitutional violation. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion in status or loss of commissary privileges). It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison, and institutions are not constitutionally required to provide these programs to inmates. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (prisoner had no 14th Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release). Prisoners do not have a fundamental right to visitation arising directly from the Constitution, *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989), and a temporary restriction on visitation as a disciplinary measure does not violate the Eighth Amendment. *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003).

Plaintiff's description of his encounters with officers under Count 4 does indicate that the distinctive clothing he was required to wear, and his housing assignment, enabled officers to easily identify him as a "staff assaulter/weapon violator," and to apparently single out that group of inmates for ill-treatment. However, this scenario does not support a retaliation or discrimination claim.

In the prison context, where an inmate alleges retaliation, the inmate must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise

8

complaining about conditions of confinement), then experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Here, the harassment and threats directed at Plaintiff may be considered "adverse actions." However, a claim for retaliation must fail in this context, because the adverse actions were not triggered by any *protected* First Amendment activity on Plaintiff's part. The alleged staff assault or weapon violation that caused Plaintiff to be placed in this program does not constitute protected activity – to the contrary, such behavior is outlawed by prison rules. Even if Plaintiff was wrongly placed in this program, being charged with a conduct violation, or being labeled as a "staff assaulter" or "weapons violator" is not a protected activity that would support a First Amendment retaliation claim.

As to Plaintiff's discrimination claim, "[t]he gravamen of equal protection lies not in the fact of deprivation of a right but in the *invidious classification* of persons aggrieved by the state's action." *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (emphasis added). Plaintiff's narrative does suggest that after he and other inmates were placed in the staff assaulter/weapon violator program, they were "singled out [as] a particular group for disparate treatment" by the Defendants listed in Count 4, *see Nabozny*, 92 F.3d at 453-54. However, the prison classification as a staff assaulter/weapon violator is not the same as the "invidious" classifications of race, gender, or religious affiliation, that would give rise to an actionable discrimination/equal protection claim. Further, even if the Court were to recognize a discrimination claim here, it would be duplicative of the Eighth Amendment claim in Count 4, and subject to dismissal on that basis. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free

9

exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 F. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims).

For these reasons, **Count 5** against Groves, Lashbrook, Samuels, Baldwin, Westfall, Doeding, Webb, Caron, Keller, Reynolds, McDonough, Montroy, Stinson, Edwards, and Francis shall be dismissed for failure to state a claim upon which relief may be granted.

## Dismissal of Count 6 – Deprivation of Property

Finally, Plaintiff asserts that Doeding and Montroy were responsible for the loss of Plaintiff's personal property items that were taken from his cell at Menard, and which were supposed to be sent to Pontiac when Plaintiff was transferred there in June 2017. (Doc. 2, p. 21; Doc. 2-1, pp. 41-43). A number of Plaintiff's legal publications, transcripts, books, and other personal items disappeared during the transfer.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff cannot maintain a civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy, in the form of an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). The

availability of the Court of Claims process means that Plaintiff cannot bring a Fourteenth Amendment claim in federal court based on this incident. Nor may he assert a claim in this Court based on Illinois law.

Accordingly, the civil rights claim in **Count 6** based on the loss of Plaintiff's property shall be dismissed with prejudice, for failure to state a claim upon which relief may be granted. The dismissal of this claim shall not affect Plaintiff's ability to bring his claim in the state courts.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 4 against the C/O John Does 10-20. However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, while no viable claim has been stated against Warden Lashbrook in her individual capacity, she shall remain as a Defendant in her official capacity only as Menard Warden. In that capacity, she shall be responsible for responding to discovery aimed at identifying these unknown Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the C/O John Does 10-20 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 6** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **GROVES, BALDWIN, DOEDING, KELLER, REYNOLDS, McDONOUGH, MONTROY, STINSON, EDWARDS,** and **FRANCIS** are **DISMISSED** from this action without prejudice. All claims against **LASHBROOK** in her individual capacity are dismissed without prejudice.

As to **COUNT 4**, the Clerk of Court shall prepare for Defendants **WESTFALL, CARON, WEAVER, WEBB, SAMUELS,** and **WARDEN LASHBROOK (Official Capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, the Memorandum and Order at Count 1, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE CORRECTIONAL OFFICERS 10-20** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 25, 2018**

                                                             s/ MICHAEL J. REAGAN
                                                             Chief Judge
                                                             United States District Court